**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANTHONY L. GOULD, | : | |
| | : | |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| | : | |

Civil No. 10-1399 (NLH)

**OPINION**

**APPEARANCES:**

ANTHONY L. GOULD, #142220C
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625
Petitioner Pro Se

JAMES F. SMITH, Assistant Prosecutor
ATLANTIC COUNTY PROSECUTOR
P.O. Box 2002
Mays Landing, New Jersey  08330
Attorneys for Respondents

**HILLMAN**, District Judge:

Anthony L. Gould filed a Petition for a Writ of Habeas

Corpus, pursuant to 28 U.S.C. § 2254, challenging a judgment of

conviction entered in the Superior Court of New Jersey, Atlantic

County, on February 27, 2003, after a jury found him guilty of the purposeful and knowing murder of Shanine Allen, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose.  Respondents filed an Answer arguing that the Petition should be dismissed as unexhausted or on the merits. For the reasons expressed below, this Court will dismiss the Petition on the merits and deny a certificate of appealability.[1]

## I.   BACKGROUND

On February 27, 2003, after a jury sitting in the Superior Court of New Jersey, Atlantic County, Law Division, found Gould guilty of murder and weapons charges, Superior Court Judge James E. Isman sentenced him to a 65-year term of imprisonment, with 30 years of parole ineligibility.  (Dkt. 11-3.)  Gould appealed. On April 11, 2005, the Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence.  See State v. Gould, Docket No. A-5678-02T4 (N.J. Super. Ct., App. Div., Apr. 11, 2005) (Dkt. 11-4).  The New Jersey Supreme Court denied certification on July 18, 2005.  See State v. Gould, 185 N.J. 38

---

[1] To the extent that Petitioner's claims are unexhausted, this Court will deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  See Carrascosa v. McGuire, 520 F.3d 249, 255 n.10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . .  Denying an unexhausted claim on the merits is consistent with the statute"); Taylor v. Horn, 504 F. 3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F. 3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the

(2005) (table).  The Appellate Division summarized the facts as follows:

> During his trial defendant never denied killing twenty-year-old Shanine Allen after beating her and stabbing her forty-two times.  The defense was that defendant's conduct did not constitute purposeful murder but rather passion/provocation manslaughter.

State v. Gould, 2009 WL 981981 (N.J. Super., App. Div., Apr. 14, 2009).

On August 26, 2005, Gould filed a state petition for post-conviction relief ("PCR").  (Dkt. 11-5.)  Judge Isman denied relief by order filed April 20, 2007, without conducting an evidentiary hearing.  (Dkt. Nos. 11-9 at 15, 11-12.)  Gould appealed, and the Appellate Division affirmed.  See State v. Gould, 2009 WL 981981 (N.J. Super., App. Div., Apr. 14, 2009). On June 19, 2009, the New Jersey Supreme Court denied certification.  See State v. Gould, 199 N.J. 543 (2009) (table).

Gould executed (and filed) the § 2254 Petition on March 9, 2010.  The Petition presents the following grounds:

> Ground One:  DEPRIVATION OF FAIR TRIAL AND DUE PROCESS BASED ON TRIAL COURT'S DEFICIENT JURY INSTRUCTIONS.

> Ground Two:  COUNSEL FAILED TO PROPERLY INVESTIGATE ON PETITIONER'S BEHALF BY NEGLECTING TO OBTAIN ANY EVIDENCE AND TESTIMONY FROM WITNESSES TO PROVE PETITIONER DID NOT COMMIT THE CRIME OF MURDER.

---

claims in question lack merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

Ground Three:  COUNSEL FAILED TO PRESENT ANY EVIDENCE AT TRIAL CONCERNING THE PETITIONER'S ALCOHOL ABUSE ISSUES, ESPECIALLY ON THE NIGHT OF THE INCIDENT, AND TO PRESENT AN INTOXICATION DEFENSE, THEREBY DEPRIVING HIM OF DUE PROCESS OF LAW.

Ground Four:  TRIAL COUNSEL FAILED TO HAVE PETITIONER TESTIFY AT TRIAL.

(Dkt. 1 at 8, 10, 13, 14.)

Respondents filed an Answer and portions of the record, arguing that this Court should dismiss the Petition as unexhausted or on the merits.  Gould then filed a motion to stay the Petition, which this Court denied without prejudice.  (Dkt. Nos. 13, 16, 17.)  Gould thereafter filed a letter asking this Court to rule on, rather than stay, the Petition.  (Dkt. 18.)

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives this Court jurisdiction to entertain a habeas petition as follows:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

4

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA further limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.[2] See 28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." Lewis v. Horn, 581 F. 2d 92, 100 (3d Cir. 2009) (quoting Thomas v. Horn, 570 F. 3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." Cullen, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state c]ourt's decision." Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011)).

proceeding.'"[3] <u>Parker v. Matthews</u>, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." <u>Parker</u>, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable

---

[3] However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." <u>Lewis</u> at 100 (quoting <u>Appel v. Horn</u>, 250 F. 3d 203, 210 (3d Cir. 2001)).

from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." <u>Williams</u>, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.  However, under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Harrington</u>, 131 S. Ct. at 785 (quoting <u>Williams</u> at 410).  As the Supreme Court explained,

> A state court's determination that a claim
> lacks merit precludes federal habeas relief
> so long as fairminded jurists could disagree
> on the correctness of the state court's
> decision . . . .  Evaluating whether a rule
> application was unreasonable requires
> considering the rule's specificity.  The
> more general the rule, the more leeway
> courts have in reaching outcomes in case-by-
> case determinations.  It is not an
> unreasonable application of clearly
> established Federal law for a state court to
> decline to apply a specific legal rule that
> has not been squarely established by [the
> Supreme] Court.

<u>Harrington</u>, 131 S. Ct. at 786 (citations and internal quotation marks omitted).[4]

 "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Cullen</u>, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  <u>Id.</u>

---

[4] <u>See also</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

## III.  DISCUSSION

A.  Due Process - Instructions

In Ground One, Gould argues that the instructions denied due process.  As factual support, he states that the court violated due process by "fail[ing] to instruct the jury that a continuing course of ill-treatment by the victim could form the basis for a verdict of passion/provocation manslaughter."  (Dkt. 1 at p. 8.)  Gould further states as factual support:

> 3.  The judge instructed the jury concerning the four elements of passion/provocation manslaughter [but] the instructions did not even suggest that the issue of provocation be considered in light of the cumulative impact of a series of event[s] in the relationship between petitioner and Shanine.  And not just on the basis of the fight immediately preceding the stabbing.

> 4.  The recent angry arguments and physical fights between petitioner and Shanine, full and fair consideration of the issue of passion/provocation manslaughter required an instruction, allowing the jurors to consider whether such a verdict was supported by a course of conduct rather than a single event.

> 5.  There was testimony by Jennifer Allen that petitioner and Shanine were always fighting; that their relationship was on and off.  Through Jennifer's testimony alone, a picture of a labile and sometimes violent relationship was brought before the jury.  If properly instructed, the jurors could have found that petitioner's provocation was reasonable and that "events had accumulated a detonating force which caused him to explode."

> 6.  A charge to the jury regarding a continuing course of ill treatment is appropriate in a

9

```
        passion/provocation manslaughter situation where there
        is sufficient evidence that petitioner, such as here,
        prior to killing the victim, was subjected to a course
        of severe ill treatment, often involving physical
        abuse.
(Dkt. 1 at 8-9.)
```

"To show that a jury instruction violates due process, a habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, and (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Williams v. Beard, 637 F.3d 195, 223 (3d Cir. 2011) (quoting Waddington v. Sarausad, 555 U.S. 179, ___, 129 S.Ct. 823, 831 (2009), Middleton v. McNeil, 541 U.S. 433, 437 (2004) and Estelle v. McGuire, 502 U.S. 62, 72 (1991)).[5]  "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle, 502 U.S. at 71-72; see also Engle v. Isaac, 456 U.S. 107, 119 (1982).[6]

Gould raised his claim challenging the manslaughter instruction on direct appeal.  The Appellate Division rejected

---

[5] See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]") (citations and internal quotation marks omitted).

[6] District courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).

the claim on the ground that the facts did not warrant the
charge requested under New Jersey law:

> The "continuing course of ill treatment" jury charge
> requested by defendant is only warranted in a case
> where there is adequate evidence that a defendant,
> prior to killing his victim, was subjected to a course
> of ill treatment . . . .  In this case, the trial
> judge ruled that the facts did not warrant such a
> charge . . . .  We agree with the trial judge's
> ruling.  There was insufficient evidence that Ms.
> Allen had subjected defendant to a continued course of
> physical abuse, the threat of physical abuse, or
> prolonged oppression.

(Dkt. 11-5 at 1-2.)

Gould cites no Supreme Court precedent clearly establishing
that he was entitled to the "course of treatment" instruction.
He is not entitled to habeas relief because the New Jersey
courts' rejection of the claim was not contrary to, or an
unreasonable application of any Supreme Court holding.  <u>See</u>
<u>Smith v. Spisak</u>, ____ U.S. ___, 130 S. Ct. 676, 684 (2010) (no
right to habeas relief if Supreme Court has not previously held
jury instruction unconstitutional for same reason).

<u>B.  Ineffective Assistance of Counsel</u>

Gould argues in Grounds Two, Three, and Four that trial
counsel was constitutionally ineffective by failing to obtain
evidence to prove that Gould did not commit murder (but
committed only the lesser included offense of

11

passion/provocation manslaughter), failing to present an
intoxication defense, and failing to prevail upon Gould to
testify regarding past repeated acts of physical and verbal
abuse Gould suffered from the victim.  (Dkt. 1 at pp. 10, 13,
14.)

The Sixth Amendment, applicable to states through the Due
Process Clause of the Fourteenth Amendment, guarantees the
accused the "right . . . to have the Assistance of Counsel for
his defense."  U.S. Const. amend. VI.  The right to counsel is
the right to the effective assistance of counsel, and counsel
can deprive a defendant of the right by failing to render
adequate legal assistance.  See Strickland v. Washington, 466
U.S. 668, 686 (1984).  A claim that counsel's assistance was so
defective as to require reversal of a conviction has two
components, both of which must be satisfied.  See Strickland,
466 U.S. at 687.  First, the defendant must "show that counsel's
representation fell below an objective standard of
reasonableness."  Id. at 687-88.  To meet this prong, a
"convicted defendant making a claim of ineffective assistance
must identify the acts or omissions of counsel that are alleged
not to have been the result of reasonable professional
judgment."  Id. at 690.  The court must then determine whether,

12

in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the

13

defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id.</u>

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Cullen</u>, 131 S. Ct. at 1403 (quoting <u>Strickland</u>, 466 U.S. at 686 (emphasis in <u>Cullen</u>)).  Habeas review of a state court's adjudication of an ineffective assistance claim is "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).

(1) Was counsel constitutionally ineffective in failing to present additional evidence to prove passion/provocation?

In Ground Two, Gould contends that counsel was constitutionally deficient in failing to prove that he did not commit the crime of murder.  As factual support, Gould states that counsel failed to call the following witnesses to testify about the victim's propensity for violence and her abusive behavior toward Gould - Darryl Harmon, Mark Johnson and his girlfriend, Gould's co-workers, Melinda Hernandez, Stephanie

14

Thomas, Sherrell Smith, Tammy Spencer, and Tina Allen.  (Dkt. 1 at pp. 10-11.)

On direct appeal, the Appellate Division noted that Shanine was "a small built well-nourished black female measuring 59 inches, a little less than five feet, and weighing an estimated 100 pounds.  She died as a result of multiple stab wounds, with one into the heart and three into the left lung."  (Dkt. 11-4) (internal quotation marks omitted).  Gould argued on direct appeal that the trial judge improperly denied his request (on hearsay grounds) to cross examine Jennifer Allen, Shanine's sister, with respect to past incidents of violence by Shanine, which Gould argued should have been admitted to show provocation.  In rejecting the claim, the court observed:

> [D]efendant attempted to introduce previous acts of violence between the parties, including keys being thrown at defendant by [the victim] and an act of violence that took place while the couple was in Florida.  During the discussion outside of the presence of the jury, when asked how long prior to the stabbings the keys had been thrown at defendant, defense counsel answered:  "I think it was a number of months prior to that."  Defense counsel elaborated that "there was a second incident prior to this that took place . . . within two months of this incident . . . while the defendant and the victim were away in Miami."  The victim's sister was not present during either of these incidents, and the trial judge concluded:  "Well, we can have a 104 Hearing at the appropriate time on each of those to determine whether or not the defense will be entitled to bring these

15

out.  But they're not going to come out through
Jennifer Allen . . ."

The trial judge more fully explained his ruling the
next day:

> Mr. Miller[, defense counsel,] indicated a
> desire, if you will, to get into past instances
> where his client alleges that the decedent either
> threw things at him or assaulted him which is . .
> . going to his reasonable mind in that this
> wasn't a one-shot deal is what he is trying to
> argue.  The only person that can make that
> argument as far as I'm concerned is the
> defendant.  So if the defendant wishes to take
> the stand and testify as to that, then that goes
> to his state of mind, that goes to his feelings,
> his provocation . . .

(Dkt. 11-4 at 27-28.)

Gould argued in his PCR petition that counsel was deficient

in failing to call these witnesses to show the history of

provocation by Shanine.  The Appellate Division did not discuss

the issue, but Judge Isman rejected this claim as follows:

> The first argument that the petitioner advanced here
> was that counsel was ineffective for failing to call
> certain witnesses.  Well, we know from [PCR counsel's]
> presentation that these so-called witnesses were
> apparently interviewed:  Daryl Harmon, Mark Johnson,
> Mark Johnson's girlfriend who petitioner cannot recall
> the name of, Melinda Hernandez, Stephanie Thomas,
> Cheryl Smith, Tammy Spencer, coworkers - now none of
> these people, I point out, could have been or were
> witnesses to the killing.  Rather, they supposedly
> were witnesses to the past behavior of the victim, the
> fact that she was violent and abusive toward defendant
> in the months leading up to her death.  There have
> been no affidavits or certifications presented as to
> any of these people or what they would have been able

16

> to tell the Court.  Without that, this Court has
> nothing to measure counsel's performance against.  All
> I'm left with is the rather bald assertion that these
> people would have shown violence on the part of the
> victim . . . .  The other issue there is - and I've
> said this before, and I'll say it again.  It is hard
> for me to imagine, whatever these people could have
> said, however . . . abusive she could have been, the
> fact is that for months this petitioner kept taking
> her out, for months he kept dating her, calling her,
> picking her up.  I think she was still living at home
> at the time.  So he kept up the relationship as did
> she, and whatever may have been said to him or done to
> him months earlier, what difference would that make in
> a case where he takes out a knife when she's not
> armed, smaller than he, in the backseat of a car, has
> nowhere to escape to, and stabs her 42 times?  It's
> almost as though Mr. Gould is oblivious to that . . .
> .  It's almost like, well, you know what, if a woman
> really pushes your buttons enough, that certainly
> explains why you'd stab her 42 times when she's in a
> position of helplessness.  I just don't buy that . . .
> .  I doubt that any reasonable jury would have bought
> that had they even heard that.  It's almost as though
> it's insulting to the victim, and maybe that's the way
> Mr. Miller felt, that that is almost ridiculous to
> bring up in response to what happened here.

(Dkt. 11-13 at 18-20).

In essence, Judge Isman found that counsel was not

deficient in failing to present additional evidence that Gould

was provoked into stabbing Shanine (42 times) because such a

defense was doomed to fail.  This reasoning is consistent with

Strickland.  In Knowles v. Mirzayance, 556 U.S. 111 (2009), the

Supreme Court noted that counsel cannot be deficient in "merely

recommend[ing] the withdrawal of what he reasonable believed was

17

a claim doomed to fail," as the Supreme Court "has never
required defense counsel to pursue every claim or defense,
regardless of its merit, viability, or realistic chance of
success."  Id. at 123, 124.  As the Supreme Court explained:

> [T]he state court's rejection of
> Mirzayance's ineffective-assistance-of-
> counsel claim [based on failure to present
> an insanity defense] was consistent with
> Strickland.  The Court of Appeals insisted,
> however that reasonably effective assistance
> required here that counsel assert the only
> defense available.  But we are aware of no
> "prevailing professional norms" that prevent
> counsel from recommending that a plea be
> withdrawn when it is almost certain to lose
> . . . .  The law does not require counsel to
> raise every available nonfrivolous defense.
> See Jones v. Barnes, 463 U.S. 745, 751
> (1983) . . . .  Counsel also is not required
> to have a tactical reason - above and beyond
> a reasonable appraisal of a claim's dismal
> prospects for success - for recommending
> that a weak claim be dropped altogether.
> Mirzayance has thus failed to demonstrate
> that his counsel's performance was
> deficient.

Knowles, 556 U.S. at 126-27 (citations, internal quotation marks
and footnote omitted).

     In this case, given the facts, the overwhelming evidence of
knowing and purposeful murder, and the "doubly differential"
standard of review, this Court cannot say that counsel's failure
to present additional evidence of provocation was
constitutionally deficient.  Nor has Gould shown a reasonable

18

probability that the result of the trial would have been different if counsel had presented the suggested witnesses. Thus, he is not entitled to habeas relief on Ground Two.

(2) Was counsel constitutionally deficient in failing to present an intoxication defense?

In Ground Three, Gould asserts that counsel was deficient in failing to present an intoxication defense.  As factual support, Gould states that Detective Larry Wade testified that Gould had alcohol on his breath at the time of arrest, and Officer Vesano's report (which was read into the trial record) stated that Gould was highly intoxicated.  Id. at p. 13.

Under New Jersey law, "intoxication of the actor is not a defense unless it negatives an element of the offense."  N.J. STAT. ANN. § 2C:2-8(a).  "[T]he degree of intoxication sufficient to negate an element of an offense must be of an extremely high level.  In order to qualify as a defense to a crime involving a purposeful or knowing state of mind, the term 'intoxication' contemplates a condition by which the mental or physical capacities of the actor, because of the introduction of intoxicating substances into the body, are so prostrated as to render him incapable of purposeful or knowing conduct."  State v. Vandeweaghe, 351 N.J. Super. 467, 477-78 (App. Div. 2002)

19

(quoting <u>State v. Cameron</u>, 104 N.J. 571, 54, 58 (1986)

(citations and internal quotation marks omitted).

Gould argued in his PCR petition that counsel was ineffective in failing to present an intoxication defense. The Appellate Division did not discuss the claim, but Judge Isman rejected it:

> Okay, counsel failed to present an intoxication defense . . . . [T]here is nothing more that conceivably could have been presented other than the defendant himself, and even had he gone up there and said "I was obliterated," the prosecutor would have been able to cross-examine him extensively with regard to, "oh, you were, were you. Well, let's see. You were able to gamble that night. You were able to walk out on your own leaving the casino. You were able to get into a car. You were able to drive that car from Atlantic City in the busiest time of the year, so presumable there was a lot of other traffic. You were able to negotiate traffic. You didn't have an accident . . . . You pulled over in the Economy Inn, and then you had the wherewithal when the choking wasn't enough to kill her, to pull out the knife from the console and kill her with that."
>
> I don't think, quite frankly, that any reasonable jury would have bought any further argument with regard to intoxication than was advanced by Mr. Miller, and I'm sure that Mr. Miller was concerned about how this defendant would sound . . . . There's a woman that was stabbed 42 times here, and obviously whoever stabbed her wanted to kill her.

(Dkt. 11-13 at 20-21.)

The federal Constitution does not require a jury to consider voluntary intoxication in determining whether the

defendant purposely and knowingly caused the death of a person, see Montana v. Egelhoff, 518 U.S. 37 (1996); Goodwin v. Johnson, 132 F.3d 162, 191 (5th Cir. 1997), and the issue of whether the evidence is sufficient to support an intoxication instruction is a question of state law.  See Carpenter v. Vaughn, 296 F.3d 138, 152-53 (3d Cir. 2002); cf. Egelhoff, 518 U.S. 37.

Here, the New Jersey courts determined that, in light of the facts surrounding the crime and the legal standard for an intoxication defense, counsel was not deficient in failing to present a losing defense.  Given the doubly deferential standard under § 2254(d)(1), this Court finds that the New Jersey courts' adjudication of this ineffective assistance claim was not contrary to, or an unreasonable application of Strickland or other Supreme Court precedent.  See Knowles, supra.

(3) Was counsel constitutionally ineffective in failing to persuade Gould to testify?

In Ground Four, Gould maintains that counsel was ineffective in failing to have him testify.  As factual support, Gould states that "counsel was constitutionally ineffective for not having me testify to present evidence of repeated acts of physical and verbal abuse I suffered at the hands and tongue of Shanine Allen after the Court ruled no evidence of Shanine Allen's ongoing course of ill treatment toward me in the form of

verbal and physical abuse could be elicited through . . . cross-
examination." Id. at 15.

Gould presented this claim in his PCR petition.  Judge

Isman rejected it on the ground that Gould had voluntarily

decided not to testify in his own defense:

> Petitioner's argued that his counsel was ineffective
> in not having him testify.  I think the prosecutor hit
> the nail on the head.  That's why you have a colloquy
> with the defendant at a trial.  If not, it would be a
> total sham.  The trial record is very clear on this
> point.  I know my clerk dug out actual questioning
> from me to [Gould] on January 14:  "Sir, you have
> discussed I'm sure with Mr. Miller whether it would be
> in your best interest to testify or not to testify in
> this case.  What have you chosen to do?"
>
> And [Gould] answered under oath:  "Chosen not to take
> the stand."  And I asked him then as I must:  "Has
> anybody forced or threatened you to get you to make
> that decision?"  His answer being no.  I have a right
> to rely upon that.  An appellate court has a right to
> rely upon that, and, quite frankly, Mr. Miller has a
> right to rely upon that without being second-guessed .
> . . .  If petitioners were given post-conviction
> relief because now they come in after testifying and
> now they say "my lawyer forced me to testify and I got
> cross-examined till the cow's came home on the stand
> and ruined my case" or the converse, as is trying to
> be done here, we might as well just try every case
> twice because that's what every petitioner would do.
> That is no indicia whatsoever that there's a
> deficiency with counsel, that counsel did anything
> [in]appropriate []or that it would have changed the
> outcome because there's no question in my mind that
> with the whole story here, Mr. Gould would have been
> riddled on cross-examination by Prosecutor Litke . . .

(Dkt. 11-13 at 22-23.)

The Appellate Division discussed the issue, affirming the
determination of Judge Isman, as follows:

> [Gould's] main argument before us on PCR is that he
> was entitled to an evidentiary hearing to fully
> address his claim that his trial attorney was
> ineffective by not insisting that he testify at his
> trial about "the repeated acts of physical and verbal
> abuse [he] suffered at the hands and tongue of Shanine
> Allen."  The argument has no merit.
>
> Defendant was specifically examined by Judge Isman as
> to his decision whether to testify on his own behalf.
> Defendant freely, knowingly, and intelligently
> responded by waiving his right to testify.  He cannot
> now premise an ineffective assistance of counsel claim
> for PCR on his failure to testify.  Moreover, as noted
> by Judge Isman, if defendant's attorney had prevailed
> upon him to testify at trial, there was no realistic
> possibility that the jury's verdict would have been
> altered in light of the savage and continuous attack
> upon the victim.

State v. Gould, 2009 WL 981981 at *1 (N.J. Super. Ct., App.

Div., 2009).

The constitutional right to "testify on one's own behalf at

a criminal trial," Rock v. Arkansas, 483 U.S. 44, 51 (1987), is

personal and the accused, not counsel, has the authority to make

the decision to testify.  See Jones v. Barnes, 463 U.S. 745, 751

(1983) ("the accused has the ultimate authority to make certain

fundamental decisions regarding the case, as to whether to plead

guilty, waive a jury, testify in his or her own behalf, or take

an appeal"); United States v. Leggett, 162 F.3d 237, 254 (3d

Cir. 1998) (right to testify "can be waived only by the defendant, not defense counsel").

Here, the New Jersey courts rejected Gould's claim that counsel was ineffective in not persuading him to testify based on the finding that Gould decided not to testify.  This Court is required to presume the correctness of this factual finding, and Gould has failed to rebut it by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

The New Jersey courts also ruled that Gould did not show that there was a reasonable probability that, if he had testified, the outcome of the case would have been different. Gould is not entitled to habeas relief on this claim because he has not shown that the adjudication of the claim was based on an unreasonable determination of the facts, in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), or contrary to, or an unreasonable application of Strickland or other clearly established Supreme Court precedent, see 28 U.S.C. § 2254(d)(1).

C.  Certificate of Appealability

This Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

### IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.


                              s/ Noel L. Hillman
                         **NOEL L. HILLMAN, U.S.D.J.**

Dated:  August 15, 2012
At Camden, New Jersey